Argued June 23, reversed and remanded September 18, 1978

KIBBLE, *Petitioner,*
*v.*
EMPLOYMENT DIVISION et al, *Respondents.*
(No. 77-AB-1297, CA 9465)

584 P2d 340

Keith B. Rogers, Oregon Legal Services Corp., Albany, argued the cause and filed the brief for petitioner.

James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Leading Plywood Corporation.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

[ 243 ]

JOHNSON, J.

## JOHNSON, J.

Claimant appeals from a decision of the Employment Appeals Board (Board) denying her unemployment compensation. The Board's findings of fact and conclusions were as follows:

"FINDINGS OF FACT: (1) Claimant was employed as a dryer feeder by this employer from February 18, 1976 to July 15, 1977 at the closing rate of $6.76 an hour. (2) The employer has a policy regarding maternity leave of absence that the employee may continue to work subject to periodic reports from her doctor that she is physically able to continue working; at such time as the doctor certifies that she is no longer able to continue working, a leave of absence will be granted and continue until the individual is released by her doctor to return to work * * *. (3) During the first week in July, 1977 the claimant was told by her doctor that she may continue her work until such time as it makes her uncomfortable. (4) The claimant's pregnancy was due to terminate in December, 1977. (5) On July 6, 1977 the personnel manager wrote to the Obstetrics and Gynecology Clinic the claimant was attending describing her work and asking the clinic to respond to the claimant's ability to continue working at her regular job * * *. (6) By letter dated July 11, 1977, a statement was made by one of the four physicians attending the claimant 'Tamara Kibble may work until July 15, 1977.' * * *. (7) A 'Request for Medical Information' was signed by one of the other attending physicians on July 28, 1977 setting out that claimant may do sedentary or nonstrenuous work until November, 1977 * * *. (8) The claimant was granted a leave of absence on July 15, 1977 * * *. (9) The leave of absence was accepted by the claimant although the claimant felt she was still able to continue performing her duties.

"(10) On August 10, 1977 the claimant executed a statement that she would accept minimum pay of $5.50 an hour unless she obtained employment with a certain employer who has 'good' medical, dental and life insurance with a profit-sharing plan in which case she would accept a minimum of $3.57 an hour * * *. (11) The claimant would have accepted an offer of $3 or $4 an hour as a receptionist, clerical worker or sales person.

[ 245 ]

(12) Her experience in these fields is very limited. (13) The claimant has experience as a waitress but her husband '. . . didn't want her to look for restaurant jobs.' * * *. (14) The claimant plans on returning to work for this employer after the termination of her pregnancy if she is so able.

"CONCLUSIONS AND REASONS: * * *

"The claimant accepted the maternity leave of absence although she has testified that she felt as if she would have been able to continue working. We find this acceptance of the leave of absence approximately one week after her doctor had stated to her that she could continue working until her work made her uncomfortable was contradictory to the letter that she should not work after July 15, 1977. We find that her acceptance of this leave of absence under these conditions is a leaving of the work because of pregnancy which creates a presumption of inability to work under the provisions of ORS 657.155(2).[1] This presumption has not been overcome by the claimant's search for work in a field where she has little or no training or experience, by completely neglecting a field where she does have training and experience and by her unrealistic wage demands. * * *"

■ The Board rests its conclusion on the fact that the claimant "accepted" the leave of absence. The undisputed evidence as indicated by the Board's findings (2) through (6) is that claimant was required by her

---

[1] ORS 657.155 in pertinent part provided:

"(1) An unemployed individual shall be eligible to receive benefits with respect to any week only if the administrator finds that:
"* * * * *

"(c) He is able to work, is available for work, and is actively seeking and unable to obtain suitable work. * * *
"* * * * *

"(2) An individual who leaves work because of a disability, such as illness, injury or pregnancy shall be presumed unable to work until the administrator determines that the individual is able to work as required by paragraph (c) of subsection (1) of this section."

The presumption provided for in ORS 657.155(2) quoted above was repealed effective October 1, 1977, Oregon Laws 1977, chapter 295. We do not need to reach the question in this opinion whether the repeal was retroactive.

employer to terminate employment based upon information supplied the employer by claimant's doctor.[2] The acceptance of the leave of absence by claimant merely signified that she intended to return to her former job with the employer when released by her doctor.

■ While under ORS 657.155(2) pregnancy created a rebuttable presumption that an individual is unable to work, here the undisputed evidence, again as indicated by the Board's own findings, was that claimant was able to do "sedentary or nonstrenuous work" and was available for such work.

Based upon the record and the Board's own findings, we conclude as a matter of law that claimant was entitled to compensation. ORS 657.155.

Reversed and remanded.

---

[2]The employer had a written maternity leave policy as follows:

"It is the policy of Brand S Corporation to grant maternity leave under the following conditions to all full-time employees.

"1. In the event of the pregnancy of an employee, the employee may continue to work subject to receipt by the Company of periodic reports from her doctor that she is physically able to continue working.

"2. At such time as the doctor certifies that she is no longer able to continue working, a leave of absence will be granted, which will continue until the employee is released by her doctor to return to her regular job.

"3. Subject to compliance with the above-specified conditions, the employee will be reinstated to her original position with no loss of seniority or length of service.

"An employee will retain all seniority rights while on an approved leave of absence, provided that they do not accept other employment while on such leave."